UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
**CENTURYLINK, INC.,**                              :
                                                    :
                  **Plaintiff,**          :
                                                    :       **OPINION & ORDER**
           -against-                          :
                                                    :       11 Civ. 5528 (HB)
**DISH NETWORK, L.L.C.,**                           :
                                                    :
                  **Defendant.**         :
------------------------------------------------------------X

**Hon. HAROLD BAER, JR., District Judge:**

The present question before the Court is whether defendant DISH Network, L.L.C., ("DISH") may unilaterally implement a 60-month cap on the duration of certain payments owed to plaintiff CenturyLink, Inc. ("CenturyLink"). After careful consideration of the parties' respective interpretations of the Contract, I conclude that DISH may not.

## Background

In July 2012, I granted CenturyLink's motion for judgment on the pleadings and interpreted the Contract in CenturyLink's favor. *See CenturyLink, Inc. v. DISH Network, L.L.C.*, 11 CIV. 5528 HB, 2012 WL 3100782 (S.D.N.Y. July 31, 2012). Familiarity with that Opinion and Order is assumed. In September 2012, after the parties appeared before me for a mediation to resolve outstanding damages and other issues, I invited the parties to brief the question of whether DISH may modify the Payment Standards in Schedule 9.8.1 to limit the duration of monthly incentive ("MI") payments to 60 months—a standard that DISH purportedly uses for its retailers generally.

## Discussion

The same standards for contract interpretation relied on in my earlier Opinion and Order apply here as well. If the Contract is clear and unambiguous, it must be enforced according to its terms. Otherwise, we are presented with a question of fact that I am unprepared to, but need not, address at this time.[1]

---

[1] CenturyLink anticipates this contingency and argues that any reasonable inference to be drawn from the available extrinsic evidence suggests that Schedule 9.8.1 cannot be used to affect the duration of MI payments. Pl.'s Br. 9–10. Because I find that the Contract is unambiguous on this issue, I need not express a view on the evidence except to

Schedule 9.8.1 reads:

## Payment Standards

The following standards are currently employed by [DISH] for the payment of Incentives. [DISH] reserves the right, in its sole discretion, to extend and/or modify these standards from time to time, provided that [DISH] will use the same standards that it uses for retailers, generally.

**Activation Incentives and Promotional Compensation**

Payment of Activation Incentives or Promotional Compensation will be made in accordance with the following standards:

. . .

**Monthly Incentives**

Payment of [MIs] will be made in accordance with the following standards:

- Each Qualified Subscriber account must have been authorized to receive Qualified Programming for twenty-eight (28) days within a given month in order to be eligible for [MIs].

- [MIs] pay forty-five (45) days from the last day of the qualifying month (on or around the 15th of each month). For example, January [MIs] pay forty-five (45) days from the last day in January (the 31st) which would be approximately March 15th.

- Provided [CenturyLink] has reached the [MI] activation minimum (1 activation), payment of [MIs] to [CenturyLink] will commence when and for such times as [MIs] payable to [CenturyLink] exceed twenty-five dollars ($25.00).

**Charge-Backs and Repayment**

In the event that [CenturyLink] is charged back Activation Incentives (or other incentives . . . ) due to the disconnection or downgrade of Qualified Programming (whether voluntary or due to non-payment), [CenturyLink] will automatically be repaid all of the payments (minus [MIs]) that charged-back if the following criteria is met within the prescribed timeliens:

. . .

- [MIs] will discontinue on any Qualified Subscriber if such account has terminated any agreement with [DISH], disconnected or downgraded for any reason.

---

say that the absence of negotiations over the language of Schedule 9.8.1 is likely insufficient at the moment for me to find that "the *only* logical conclusion is that the parties never envisioned" this type of modification. *Id.*

. . .

Contract Schedule 9.8.1. DISH seeks to modify this provision such that MI payments would be made for each Qualified Subscriber for up to 60 months following the date of initial activation.

An appropriate modification of Schedule 9.8.1 depends on what a *payment standard* is understood to mean. If the 60-month cap is beyond the ken of what a payment standard can encompass, then DISH may not invoke its unilateral right and must instead look to some other provision. Both parties have provided what amount to limiting principles that they feel capture the spirit of Schedule 9.8.1.

CenturyLink argues that DISH cannot use Schedule 9.8.1 to negate other provisions governing the duration of MIs. *See* Pl.'s Br. 1–5. CenturyLink points to language in § 1 and Schedule 9.1 that I have already interpreted to mean that MIs are paid for as long as a customer "remains" a Qualified Subscriber. *Id.* at 2 ("If a customer remains a subscriber for 61 or more months, these provisions working together require DISH to continue to pay [MIs] until that last customer stops receiving service."). Schedule 9.8.1, on the other hand, "sets forth *procedural standards* governing the manner in which [MI] payments are made . . . ." *Id.* CenturyLink also points to § 12.1(i), which gives CenturyLink the right to terminate the Contract if DISH "changes the payment procedures set forth in Schedule 9.8.1 in such a way as to result in a materially adverse change to [CenturyLink's] reasonably anticipated economic benefits under [the Contract] . . . ." CenturyLink goes on to argue that the 60-month cap would put Schedule 9.8.1 in conflict with § 1, § 9.4 (which provides for circumstances when the MI ceases to be paid, such as non-payment by a subscriber), and Schedule 9.1.[2]

DISH looks to the proviso that Schedule 9.8.1 modifications must be limited to "the same standards as it uses for retailers, generally." Def.'s Br. 6, 11 (quoting Schedule 9.8.1). And DISH argues that §§ 1 and 9.1 "expressly contemplate that payments of MI will be governed by *Schedules 9.1* and *9.8.1*, including DISH's discretionary right in *Schedule 9.8.1* to change the payment standards." *Id.* at 8. Much of the rest of DISH's brief is devoted to patching the holes in

---

[2] Section 1 states: "'Monthly Incentive' means a monthly recurring payment for each month that a Qualified Subscriber acquired by [CenturyLink] remains a Qualified Subscriber, as further described in Schedules 9.1 and 9.8.1."

Schedule 9.1 states, in pertinent part: "For each month that a new Qualified Subscriber acquired by [CenturyLink] remains a Qualified Subscriber . . . [DISH] will pay [CenturyLink] a Monthly Incentive of $1.75 per such Qualified Subscriber . . . ."

the Contract that the imposition of the 60-month cap creates. For example, DISH argues that retroactivity is not an issue because DISH is not seeking a clawback of payments already made to CenturyLink—DISH is attempting to apply the 60-month cap only from the end of the Contract term. *Id.* at 9–10. DISH justifies this benchmark because these are the unforeseen "payments required by the July 31 Opinion for the period from June 2010 forward." *Id*. However, the implication of my Opinion and Order is that the *Contract* required those payments. DISH is effectively arguing that it should be allowed to reduce past payments that it unjustifiably withheld. This is a clawback by another name.

By its modification, DISH hopes to reduce the amount in damages owed to CenturyLink by limiting the duration of the MI payments. Though the tension the 60-month cap creates between Schedule 9.8.1 and § 1, § 9.4, and Schedule 9.1 is palpable, CenturyLink goes too far in suggesting that an appropriate modification to the payment standards cannot affect the duration of MI payments. The best provision to make the sort of modification DISH desires is in Section 1 and Schedule 9.1, but the line separating these various provisions is not so clear. The right to MI payments in §§ 1 and 9.1 are bound up with the standards provided in Schedules 9.1 and 9.8.1. The details in the Schedules to the Contract put the meat on the bones of the pertinent sections; they are part of the same corpus. While I agree with CenturyLink that Schedule 9.8.1 is "procedural" in its focus, this does not mean that the procedures cannot affect the value (or duration) of the MI payments. If DISH elected to increase the minimum total threshold for the payment of the MI from the current floor of $25.00 to any higher number (consistent with DISH's agreements with other retailers), DISH would affect both the value and duration of the MI. This does not mean the modification would be inherently violative of the Contract: what matters is that a $30.00 floor would be de minimis whereas a $50,000 floor would not. Similarly, if the Schedule were modified such that MI payments were made by DISH, say, yearly rather than monthly, the modification would be strictly procedural but still deny CenturyLink the time-value of its incentive.

The check on abuse by DISH of its unilateral right to modify Schedule 9.8.1 lies, as CenturyLink noted, in § 12.1(i): CenturyLink may terminate the Contract if DISH "changes the payment procedures set forth in Schedule 9.8.1 in such a way as to result in a materially adverse change to [CenturyLink's] reasonably anticipated economic benefits under [the Contract] . . . ." The problem is not necessarily that the 60-month cap affects the duration of MI payments, it is

4

that the retroactive imposition of the cap results in a materially adverse change to the economic benefits under the Contract. And now that the Contract has expired, CenturyLink is no longer allowed to elect the post-termination obligations under § 12.4—the only option is to sue for breach. DISH, therefore, may not at this late stage unilaterally change Schedule 9.8.1 in such a way as to materially and adversely affect CenturyLink's economic benefit under the Contract.

This begs the question of what is "material", and what is "reasonably anticipated". With an unambiguous contract, what is reasonably anticipated is what the Contract provides for: MI payments for the life of a customer. To shorten this time span from indefinite to 60 months is material and directly diminishes the value of CenturyLink's expected economic benefit (by several millions of dollars). DISH must look instead to an amendment under § 16.4, which requires the approval of both parties.

## Conclusion

I have considered the parties' other arguments and find them without merit. DISH may not unilaterally amend Schedule 9.8.1 to impose a 60-month cap on MI payments. DISH shall continue to pay the MI consistent with my earlier Opinion and Order.

Prejudgment interest is due from the due dates of the missed MI payments. The total owed by DISH, which includes the MI payments, prejudgment interest, and mediated attorney fees of $750,000, is $13,460,336.87.

**SO ORDERED.**

**Date: _____**               _____
**New York, New York**                  **HAROLD BAER, JR.**
                                        **United States District Judge**

that the retroactive imposition of the cap results in a materially adverse change to the economic benefits under the Contract. And now that the Contract has expired, CenturyLink is no longer allowed to elect the post-termination obligations under § 12.4—the only option is to sue for breach. DISH, therefore, may not at this late stage unilaterally change Schedule 9.8.1 in such a way as to materially and adversely affect CenturyLink's economic benefit under the Contract.

This begs the question of what is "material", and what is "reasonably anticipated". With an unambiguous contract, what is reasonably anticipated is what the Contract provides for: MI payments for the life of a customer. To shorten this time span from indefinite to 60 months is material and directly diminishes the value of CenturyLink's expected economic benefit (by several millions of dollars). DISH must look instead to an amendment under § 16.4, which requires the approval of both parties.

## Conclusion

I have considered the parties' other arguments and find them without merit. DISH may not unilaterally amend Schedule 9.8.1 to impose a 60-month cap on MI payments. DISH shall continue to pay the MI consistent with my earlier Opinion and Order.

Prejudgment interest is due from the due dates of the missed MI payments. The total owed by DISH, which includes the MI payments, prejudgment interest, and mediated attorney fees of $750,000, is $13,460,336.87.

SO ORDERED.

Date: 12/12/12
New York, New York

HAROLD BAER, JR.
United States District Judge

5