UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

CENTURYLINK, INC.,                      :

                    Plaintiff,    :    11 Civ. 5528 (CM)(HBP)

    -against-                    :    OPINION
                                       AND ORDER
DISH NETWORK L.L.C.,                 :

                    Defendant.    :

-----------------------------------X

        PITMAN, United States Magistrate Judge:

        I write to resolve a dispute between the parties
concerning defendant's responses to four requests for admissions
("RFAs") served by plaintiff.  Plaintiff claim the responses are
deficient and seeks an Order either directing defendant to serve
amended response or deeming the requests admitted.

        The facts giving rise to this action are set forth in
two opinions by the late Honorable Harold Baer, United States
District Judge, and an opinion issued by the Court of Appeals for
the Second Circuit.  See Centurylink, Inc. v. Dish Network,
L.L.C., 11 Civ 5528, (HB), 2012 WL 3100782 (S.D.N.Y. July 31,
2012); Centurylink, Inc. v. Dish Network, L.L.C., 11 Civ. 5528,
(HB), 2012 WL 6186462 (S.D.N.Y. Dec. 12, 2012), aff'd in part,
vacated and remanded in part, 554 F. App'x 51 (2d Cir. 2014).

Familiarity with these opinions and the issues in this action is assumed.

The present dispute arises out four RFAs plaintiff served concerning the negotiations that resulted in the contract between the parties.  The RFAs and the responses are as follows:

Request No. 1

When negotiating the Contact in 2006 and 2007 prior to its execution, EchoStar and Embarq did not discuss a 60-Month Cap on Monthly Incentives.

Response

Denied, subject to the following qualification. During the 2006/2007 negotiations regarding the EchoStar/Embarq Amended and Restated Sales Agency Agreement dated as of May 1, 2007 (the "Contract"), EchoStar (hereinafter "DISH") and Embarq (hereinafter "CenturyLink") discussed payment standards contained in DISH's Retailer Business Rules applicable to DISH's retailers that included the 60 month cap, as part of the discussions relating to DISH's "sole discretion" right under Schedule 9.8.1 and CenturyLink's rights under Section 12.1(i) and Section 12.4(d).

Request No. 2

When negotiating the Contact in 2006 and 2007 prior to its execution, EchoStar and Embarq did not discuss whether DISH should have the right to employ a 60-Month Cap on Monthly Incentives.

Response

Denied, subject to the following qualification. During the 2006/2007 negotiations regarding the Con-tract, DISH and CenturyLink discussed payment standards contained in DISH's Retailer Business Rules applicable to DISH's retailers that included the 60 month cap, as part of the discussions relating to DISH's "sole dis-

2

cretion" right under Schedule 9.8.1 and CenturyLink's rights under Section 12.1(i) and Section 12.4(d).

Request No. 3

When negotiating the Contact in 2006 and 2007 prior to its execution, EchoStar and Embarq did not discuss that Schedule 9.8.1 would permit DISH to employ a 60-Month Cap on Monthly Incentives.

Response

Denied, subject to the following qualification. During the 2006/2007 negotiations regarding the Contract, DISH and CenturyLink discussed payment standards contained in DISH's Retailer Business Rules applicable to DISH's retailers that included the 60 month cap, as part of the discussions relating to DISH's "sole discretion" right under Schedule 9.8.1 and CenturyLink's rights under Section 12.1(i) and Section 12.4(d).

Request No. 4

When negotiating the Contact in 2006 and 2007 prior to its execution, EchoStar did not provide copies of its Retailer Business Rules to the Embarq personnel who were negotiating the Contract.

Response

Denied, subject to the following qualification. During the 2006/2007 negotiations regarding the Contract, DISH and CenturyLink discussed payment standards contained in DISH's Retailer Business Rules applicable to DISH's retailers that included the 60 Month cap, as part of the discussions relating to DISH's "sole discretion" right under Schedule 9.8.1 and CenturyLink's rights under Section 12.1(i) and Section 12.4(d) and discussed that DISH had made the Retailer Business Rules available to CenturyLink through DISH's "Retailer Care Site."

(Defendants Objections and Responses to Plaintiff's Second Set of Requests for Admission, annexed as Exhibit 2 to Letter of Douglas P. Lobel, Esq. to the Undersigned, dated July 30, 2014).

Plaintiff claims that the responses to RFA's 1-3 dodge the requests which, according, to plaintiff, simply seek an admission that the parties did not discuss the 60-month cap. Plaintiff similarly claims that RFA simply seeks an admission that defendant did not provide a copy of the Retailer Business Rules to the Century Link personnel negotiating the contract and that defendant dodged that RFA too (see Letter of Douglas P. Lobel, Esq., to the Undersigned, dated July 30, 2014 at 5).

In <u>Wiwa v. Royal Dutch Petroleum Co.</u>, 96 Civ. 8386 (KMW)(HBP), 01 Civ.1909 (KMW)(HBP), 2009 WL 1457142 at *4-*5 (S.D.N.Y. May 26, 2009), upon which both parties rely, the Honorable Kimba M. Wood, United States District Judge, set forth the standards by which the adequacy of qualified responses to RFAs should be judged:

> Qualification of a denial is appropriate if "the statement [in the request], although containing some truth, standing alone out of context of the whole truth conveys unwarranted unfair references." <u>Champlain</u>, 212 F.R.D. at 78 (internal quotation and alterations omitted) . . . .
>
> Any qualifications should "provide clarity and lucidity to the genuineness of the issue and not . . . obfuscate, frustrate, or compound the references." <u>Champlain</u>, 212 F.R.D. at 78; <u>see</u> <u>Beberaggi v. New York</u>

City Transit Auth., No. 93 Civ. 1737, 1994 WL 18556, at
*4 (S.D.N.Y. Jan 19, 1994) (finding insufficient a
response that rephrased the admission in a way that
"injected ambiguity into [the] answer and left unclear
what it was denying and the reason for the denial").
However, the bar for a qualified denial should not be
set too high.  A response should be deemed sufficient
if it reasonably informs the requesting party what is
being admitted or denied.  See JP Morgan Chase Bank v.
Liberty Mutual Ins. Co., No. 01 Civ. 11523, 2002 WL
31159139, at *1 (S.D.N.Y. Sept. 27, 2002).

                    *      *      *

[A] motion to determine the sufficiency of a response
is "not to be used as an attempt to litigate the accu-
racy of a response."  [Moore's Federal Practice §
36.12[3].] (emphasis added).  A response can be suffi-
cient, even if it is not ultimately determined to have
been accurate.  See United States v. Operation Rescue
Nat., 111 F.Supp.2d 948, 968 (S.D. Oh. 1999) (a re-
sponse "is insufficient if it is not specific or the
explanation for the refusal to admit or to deny lacks
in detail, not because a denial may be contrary to the
evidence").

Accord 2 Michael Silberberg, Edward M. Spiro & Judith L. Mogul,

Civil Practice in the Southern District of New York § 22:7 at 266

(2013-2014 ed.) ("A qualification should be clear and should

avoid injecting ambiguity into the response, such that the

response will reasonably inform the requesting party what is

being admitted and what is being denied.").

　　　Although defendant's responses are, no doubt, not the

responses plaintiff hoped for, they are not deficient.  As

plaintiff itself admits in its reply letter, defendant's re-

sponses "paint a simple picture" and plaintiff clearly under-
stands defendant's position:

> DISH has refused to answer these simple admissions
> and instead had provided a tortured chain of logic.
> DISH's argument goes: (1) the parties discussed Sched-
> ule 9.8.1, (2) Schedule 9.8.1 references payment stan-
> dards DISH generally uses for retailers, (3) payment
> standards that DISH generally uses for retailers are
> the Retailer Business Rules, (4) CenturyLink could have
> accessed those Retailer Business Rules through DISH's
> website or public filings if it had searched for them
> (apparently charging CenturyLink with knowledge of
> information available, but not actually reviewed), and
> (5) if CenturyLink had located the Retailer Business
> Rules, it would have seen that they contained a 60-
> Month Cap applicable to DISH's retailers; so _ipso_ _facto_
> the parties "discussed" the 60-Month Cap and DISH
> "provided copies" of its Retailer Business Rules to the
> Century Link negotiators.

> These responses paint a simple picture -- DISH
> implicitly acknowledges the parties never discussed the
> 60-Month Cap specifically, and DISH did not provide
> Century Link with copies of the Rules.  DISH should be
> required to admit these requests, or the Court should
> deem them admitted.

(Letter of Douglas P. Lobel, Esq., to the Undersigned, dated Aug.
4, 2014 at 2).  Because plaintiff admittedly understands defen-
dant's position and there is no ambiguity, the responses are not
deficient.  Plaintiff's disagreement with the logic of defen-
dant's response is immaterial.

Moreover, the qualified responses may be accurate.  If,
for example, defendant's negotiator told plaintiff's negotiator
that defendant understood that the Contract would be governed by

defendant's Retailer Business Rules and asked if plaintiff had any disagreements, questions or issues with those rules, the qualifications defendant has added to its responses may be entirely fair and requiring defendant to make an unqualified admission might require it to admit to facts that are inaccurate.

Finally, I note that the RFAs are not the only avenue available to plaintiff to ascertain defendant's position concerning the events that occurred during the Contract negotiations. Plaintiff can take a Rule 30(b)(6) deposition of defendant concerning the negotiations and thereby discover all the facts in defendant's possession concerning what was said and done during the negotiations.

Accordingly, for all the foregoing reasons, plaintiff's application to compel supplemental responses to its RFAs or to deem the subject matter of the RFAs admitted is denied.

Dated:   New York, New York
         August 7, 2014

                         SO ORDERED

                         HENRY PITMAN
                         United States Magistrate Judge

7

Copies transmitted to:

Douglas P. Lobel, Esq.
Cooley LLP
11951 Freedom Drive
Reston, Virginia   20190-5656

John M. Agnello, Esq.
Carella, Byrne, Cecchi, Olstein,
   Brody & Agnello, P.C.
5 Becker Farm Road
Roseland, New Jersey   07068